UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.:  05-418 (JR) |
| | : | |
| v. | : | |
| | : | |
| GREGORY HURT, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF
DEFENDANT'S POST-TRAUMATIC STRESS DISORDER, OTHER CLAIMS FOR
BENEFITS AND FAILURE OF THE DEPARTMENT OF VETERANS AFFAIRS TO
FOLLOW PROTOCOL IN THE ISSUANCE OF A REPLACEMENT AWARD**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves this Court to exclude evidence that the defendant may seek to introduce at trial, either through cross-examination or in his case-in-chief, of post-traumatic stress disorder, other claims for veterans' benefits, and failure of the Department of Veterans Affairs ("VA") to follow protocol in approving the replacement award at issue in this case.  For the reasons set forth below, evidence of these matters is irrelevant to proof of the charges contained in the Indictment, will mislead and confuse the jury, and will result in unfair prejudice.

**FACTUAL BACKGROUND**

Defendant Hurt is a United States veteran entitled to benefits administered by the VA, an agency of the United States responsible for the welfare of American veterans. In or about December, 2002, the Washington, D.C., regional office of the VA notified defendant Hurt that his benefits claim for Post Traumatic Stress Disorder was being awarded retroactively.  A computation of the award, with benefits properly accruing from the retroactive date of award, was approximately $234,360.10,

which the VA made payable to him in three installment checks. The retroactive award adjusted periodically to account, for example, for the birth of dependents (children) to the defendant. The December 2002 letter made clear, however, that the VA was not awarding an adjustment of the retroactive benefit for his spouse unless and until Hurt provided additional information in support of his claim that he in fact had a marital relationship during the relevant time-frame that entitled him to an increase in his award.

From January 2003 to February 2003, the VA issued three checks to defendant Hurt from the United States Treasury in the amounts of $99,999.10; $99,999.00; and $34,362.00, respectively. Defendant Hurt endorsed and deposited all three Treasury checks into his account at Andrews Federal Credit Union. As of March 2003, the VA had issued, and defendant Hurt had deposited, the total award for his retroactive claim of Post Traumatic Stress Disorder.

On July 31, 2003, defendant Hurt went to the VA regional office and complained (1) that the VA had not adjusted his retroactive award to account for his wife; and (2) that he was still waiting for an approximately $99,999.00 check. As a result of defendant Hurt's representations, the finance office of the regional VA issued a request for a replacement check in the amount of $99,999.10 for the initial check he claimed never to have received. Shortly thereafter, defendant Hurt received, endorsed, and deposited the replacement check in his account at Andrews Federal Credit Union.

In or about August 2003, the VA realized its error and sent defendant Hurt two letters by Federal Express asking for the return of its replacement check. After the VA sent the first letter, defendant Hurt requested and received a check from Andrews Federal Credit Union in the amount of $160,000 from his account. On or about September 2, 2003, defendant Hurt left a voice mail message for a VA benefits representative acknowledging receipt of the second letter. In or about

September 2003, when the VA attempted to reclaim its money directly from defendant Hurt's account at Andrews Federal Credit Union, representatives from the credit union informed the VA that defendant Hurt no longer had the necessary funds in the account.

### ARGUMENT

Evidence of Post-Traumatic Stress Disorder

In the aftermath of the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 17, 4241 *et seq.*, evidence of the defendant's mental state is admissible in only the narrowest context. The proffered evidence of a mental disease or defect must negate specific intent, and not simply establish diminished responsibility – in other words, excuse or mitigate the offense. See United States v. Childress, 58 F.3d 693, 728 (D.C. Cir. 1995) (citing cases). Accordingly, the proper framework upon which to evaluate any evidence of the defendant's mental state is the "proffered link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case." Id. at 730 (quoting United States v. Cameron, 907 F.2d 1051, 1067 n.31 (11th Cir. 1990)). Without that nexus between the defendant's alleged mental disease or defect and the element of intent, the proffered evidence is entirely without relevance and instead simply presents "a dangerously confusing theory of defense more akin to justification and excuse." Childress, 58 F.3d at 730 (quoting United States v. Brawner, 471 F.2d 969, 1002 (D.C. Cir. 1972).

In this case, there is no evidence that any mental disease or defect bore on the defendant's specific conduct at issue and his intent at the time he acted: demanding, receiving, and converting almost $100,000 of government funds. To date, the defendant has not given notice under Rule 12.2(b) of the Federal Rules of Criminal Procedure, stating an intent to introduce expert evidence relating to a mental disease or defect or any other mental condition. Without some foundation to

assert that the defendant in fact was suffering from Post-Traumatic Stress Disorder (1) at the time he is alleged to have committed the offenses set forth in the Indictment, and that (2) as a result of that disease or defect, he did not have the capacity to form the specific intent to steal or convert the funds at issue, there is no relevance to any mention of Post-Traumatic Stress Disorder, aside from presenting "a dangerously confusing theory of defense more akin to justification and excuse." Childress, 58 F.3d at 730 (quoting United States v. Brawner, 471 F.2d 969, 1002 (D.C. Cir. 1972)). Moreover, references to this claimed disorder would be unduly prejudicial where, as here, the government would have no opportunity to challenge them.

Evidence of Other Benefits Claims and Failure of the VA to Follow Protocol

The fact that the defendant may have felt (rightly or wrongly) entitled to additional benefits from the VA for his common-law wife has no relevance to the charged counts of the Indictment in this case. A defendant is never entitled to engage in self-help of this kind. The possibility that the VA may have owed the defendant additional monies did not entitle him to demand payment by claiming he had not received the money legitimately due, and it cannot negate his intent at the time he made the false claim in order to get the additional funds. Similarly, the fact that the VA failed to ensure that the check at issue had not already been deposited before requesting an additional one has no relevance to the defendant's deliberate misconduct in acquiring and keeping $100,000 of the government's money.

Pursuant to Rules 402 and 403 of the Federal Rules of Evidence, this evidence is irrelevant, or of such marginal relevance that it is outweighed by the risk of jury confusion, the need for the government to present lengthy additional testimony on collateral issues, and the possibility that the jury would render influenced by improper factors, such as sympathy for the defendant, anger with

the VA, or other inappropriate reasons. Although the law is necessarily fact-specific in the context of determinations of relevance and prejudice, there is analogous authority. For example, in United States v. Defazio, 899 F.2d 626, 634 (7th Cir. 1990), the defendant sought to introduce evidence of his running dispute with a creditor as an explanation of his "state of mind" in the filing of what the government alleged to be a fraudulent claim of bankruptcy. In affirming the trial court's exclusion of such evidence, the Seventh Circuit held that the merits of the defendant's dispute with his creditor were irrelevant to the issue of whether the defendant committed bankruptcy fraud. In the alternative, even if the proffered evidence could be considered to have some marginal relevance, the Court opined that its probative value would have been far outweighed by its potential to confuse the jury with evidence relating to a collateral dispute. Id. In another analogous case, United States v. Camuti, 78 F.3d 738 (1st Cir. 1996), the First Circuit affirmed the trial court's exclusion of evidence that, regardless of "whatever [the defendant] may have done," the victims of the defendant's alleged fraud "took advantage of him when he found himself hard-pressed and that one member had enriched himself at [the defendant's] expense." Id. at 742. Aside from its irrelevance "to any proper defense," the Court noted that the evidence sought to be adduced had "the capacity to mislead and confuse the jury"; its benefit to the defendant was "not for any legitimate purpose." Id.

The government requests that this Court rule in a similar fashion should the defendant attempt to introduce evidence of the aforementioned issues. Such evidence bears no relation to the charged offenses. Claims that he was either (1) entitled as a matter of equity to the money he stole; or (2) that he was entitled to keep the money he erroneously received because of the VA's failures to follow protocol are not legally cognizable defenses. If placed before the jury, such facts would only confuse and distract the jury from the proper issues before it, and risk the possibility that the

jury will consider improper issues in deciding the case. Accordingly, the government respectfully requests that the Court grant the instant motion in limine.

                                      Respectfully submitted,

                                      KENNETH L. WAINSTEIN
                                      United States Attorney
                                      Bar No. 451058

By:   _____
        JEANNIE S. RHEE
        Assistant United States Attorney
        Fraud and Public Corruption Section
        555 4th Street, NW, Rm. 5255
        Washington, DC 20530
        (202) 514-9832