IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. No. 05-418(JR) |
| GREGORY HURT, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT GREGORY HURT'S OPPOSITION TO GOVERNMENT'S *MOTION IN LIMINE* TO EXCLUDE EVIDENCE OF DEFENDANT'S POST-TRAUMATIC STRESS DISORDER, OTHER CLAIMS FOR BENEFITS, AND FAILURE OF DEPARTMENT OF VETERANS AFFAIRS TO FOLLOW PROTOCOL IN THE ISSUANCE OF A REPLACEMENT AWARD AND DEFENDANT'S CROSS-MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ALL EVENTS SUBSEQUENT TO DEFENDANT'S CASHING OF $99,999.10 CHECK SHORTLY AFTER JULY 31, 2003**

Defendant, Gregory Hurt, through counsel, respectfully submits this Opposition to the Government's Motion *In Limine* To Exclude Evidence Of Defendant's Post-Traumatic Stress Disorder, Other Claims For Benefits And The Failure Of The Department Of Veterans Affairs To Follow Protocol In The Issuance Of A Replacement Award (the "government's Motion" or "Motion"). Defendant also respectfully cross-moves *in limine* to exclude any evidence relating to events that transpired after defendant cashed the allegedly stolen check, i.e., shortly after July 31, 2003.

The government's motion should be denied. With the exception of a "self-help" defense that defendant does not intent on presenting, the evidence the government seeks to exclude is directly relevant and essential to defendant's defense in this matter and properly admissible.

With respect to defendant's cross-motion *in limine*, the Court should exclude all evidence of events transpiring after defendant cashed the $99,999.10 check, which was shortly after July

31, 2003.  The only issue in this case is whether defendant "embezzled, stole, and unlawfully and willfully abstracted and converted to his own use approximately $99,999.10 of money and funds of the VA."  Indictment ¶ 5.  Events subsequent to the date defendant cashed the allegedly stolen check are irrelevant to this issue and the Court should accordingly exclude evidence relating to them.

## BACKGROUND

This case arises from the Department of Veteran Affairs' (the "VA") error in sending defendant a check for $99,999.10 that the government now claims defendant was not entitled to.  As the government states in its Motion, in December 2002, the Washington D.C. regional office of the VA notified defendant that his benefits claim for Post Traumatic Stress Disorder ("PTSD") from defendant's service in the Vietnam War was being retroactively awarded.  The full award was for $234,360.10, to be paid in three installment checks.  The December 2002 letter stated, however, that the VA was not awarding defendant an adjustment to the retroactive benefit for his wife (an adjustment defendant had sought) until defendant provided additional information in support of his claim that he in fact had a marital relationship during the relevant time-frame.  As of March 2003, the VA had issued, and defendant had deposited, the total award for defendant's PTSD, which had not been adjusted for defendant's wife.

On numerous occasions in 2003, defendant and his wife visited the VA in response to the VA's December 2002 letter requiring defendant to substantiate his claim for spousal benefits.  Defendant and his wife brought paperwork to the VA on those occasions to substantiate their claim.  During one such visit, on July 31, 2003, employees of the VA agreed with defendant that he was entitled to more money and told defendant they would be issuing him a check.  Shortly

thereafter, defendant received, endorsed, and deposited a check for $99,999.10 into his account at Andrews Federal Credit Union.

The government concedes that defendant visited the VA to request increased benefits for his wife. The indictment alleges, however, that defendant also at some point stated that he never received one of his two installment checks for $99,999.10. The crux of the indictment is that defendant "falsely claimed to one or more employees of the VA that he had never received one of the checks in this amount to which he was entitled and obtained a replacement check, when in fact, as he well knew, he had received and deposited the original check." Indictment ¶ 5.

Following the date defendant deposited the check for $99,999.10, representatives of the VA allegedly contacted defendant (via letters sent through Federal Express) asking for return of the "replacement check." On or about September 2, 2003, defendant allegedly left a voice-mail message for a VA representative acknowledging receipt of the second letter. See Gov. Mot. at 2. Defendant did not return the check because he believed the check was appropriately awarded to him as an increase in his PTSD award based on spousal benefits. Upon information and belief, the VA is currently garnishing all future benefits due and owing to defendant in order to recoup the $99,999.10 which the government now claims was improperly paid to defendant.

## DISCUSSION

I. **THE COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE* REQUESTING THE EXCLUSION OF EVIDENCE OF OTHER CLAIMS FOR BENEFITS, THE FAILURE OF DEPARTMENT OF VETERANS AFFAIRS TO FOLLOW PROTOCOL IN THE ISSUANCE OF A "REPLACEMENT AWARD" AND DEFENDANT'S POST-TRAUMATIC STRESS DISORDER.**

   A. **Evidence of Other Claims and the Failure of the VA to Follow Protocol.**

The government's pleading argues that defendant should be barred from presenting

evidence of his wife's claim to benefits from the VA and evidence of the VA's failure to follow its own regulations in distributing money in this case. This section of the government's pleading conflates three distinct issues into one. Each separate issue is addressed in turn.

    1.    "Self-Help"

The first issue is whether Defendant may argue that he should be acquitted because, even though he allegedly lied about not receiving the $99,999.10 check, his alleged lie to the VA employees should be excused because he was legitimately entitled to benefits for his wife and children. See Gov. Mot. at 4-6. Defendant does not intend on making this "self-help" argument. Every case cited by the government in this section of its pleading relates to this non-issue. In United States v. Defazio, 899 F.2d 626, 634 (7th Cir. 1990), a bankruptcy fraud prosecution, the defendant sought to introduce evidence of a running dispute he had with a creditor. The court of appeals upheld the conviction and the exclusion of this evidence, as defendant's dispute with the creditor did "not excuse lying during bankruptcy examinations; the merits of his fight with a creditor are irrelevant to whether his false declarations were fraudulent." Id. at 634. Thus, Defazio stands for nothing more than that evidence of a fraud victim's own misconduct towards the defendant is inadmissible. Similarly, in United States v. Camuti, 78 F.3d 738 (1st Cir. 1996), the defendant sought to excuse his fraudulent acts by introducing evidence that the victims of the defendant's fraud had likewise attempted to take advantage of the defendant.

Defendant emphatically does not intend on arguing that he was justified in taking money from the VA under false pretenses because the VA had unjustifiably failed to act on his claim for additional benefits for his wife and children.

2.     **Evidence of Defendant's Wife's Claim to Benefits.**

The second issue is whether defendant may present evidence of his wife's claim to benefits in order to substantiate his good faith basis for seeking additional money from the VA during his trips to the VA. Incredibly, the government seeks to bar defendant from presenting evidence that he was seeking money for his wife–and not a replacement check–during his visits to the VA. Defendant is clearly entitled to present a good faith defense of this nature. See United States v. Heathersaw, 81 F.3d 765, 769 (8th Cir. 1996) ("A defendant's belief that facts exist which would give him the right to dispose of the property negates intent to steal under section 641") (citing Morissette v. United States, 342 U.S. 246, 275-76 (1952) (recognizing the notion "universal and persistent in mature systems of law" that "an injury can amount to a crime only when inflicted with intention") (Jackson, J.)); see generally Washington v. Texas, 388 U.S. 14, 19 (1967) (the right to present a defense is a "fundamental element of due process of law").

3.     **Failure of VA to Follow Protocol**

The third issue is whether defendant may present evidence of the VA's conceded failure to follow its own rules and regulations in sending defendant the $100,000 check. As noted above, one possible defense to the charges in this case is that the VA employees, realizing that they committed a very serious breach of VA protocol in sending defendant a check for $99,999.10 without properly conducting any kind of check to ascertain defendant's entitlement to the funds, have subsequently misrepresented what defendant said to them during his visits to the VA, including his visit on July 31, 2003. If defendant were to put on this defense, which is entirely proper, the VA employees' failure to follow their own governing regulations goes directly to their bias and their motive to tell a story placing the blame for the administrative error

on defendant, instead of themselves. Evidence of a witness's potential bias is clearly admissible under these circumstances. See, e.g., United States v. Davis, 127 F.3d 68, 70 (D.C. Cir. 1997) (Sixth Amendment requires that a defendant have a "realistic opportunity to ferret out a potential source of bias"); United States v. Derr, 990 F.2d 1330, 1334 (D.C. Cir. 1993) (same).

Furthermore, even were Defendant to argue simply that there was a miscommunication between Defendant and the VA employees which resulted in the VA sending defendant the $99,999.10 check, evidence of the VA's failure to follow its own protocols would still be entirely relevant. In this case, the government is claiming that defendant, three months after receiving a $99,999.10 check from the government, walked into the VA and attempted to defraud the government by claiming that he had not received the check. The common-sense reaction to the government's allegations is plain: why in the world would defendant, a man very familiar with the VA and its procedures for collecting benefits, believe that the VA would issue him a replacement check for $99,999.10 without conducting any kind of search to ascertain whether defendant had in fact received the original check? The answer is that defendant would not believe that–and he did not request a "replacement check." Defendant is constitutionally entitled to present this defense–which necessarily relies on the existence of the VA's protocols and the failure to follow them in this case--to the jury. See Holmes v. South Carolina, 126 S. Ct. 1727, 1731 (2006) ("'whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees a meaningful opportunity to present a complete defense") (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)).

Finally, evidence of the VA error is plainly necessary to avoid jury confusion and

prejudice to Defendant. Without such evidence, the jury will be left with the impression that defendant obtained close to $100,000 from the VA without following any kind of procedure or filing any kind of supporting documentation. There is a serious danger that the jury will speculate that defendant must have done <u>something</u> besides simply visit the VA in order to obtain the $99,999.10 check, <u>e.g.</u>, by providing the VA with fraudulent documentation, which is something the government concedes defendant did not do. That the VA error is crucial to explaining <u>any</u> version of events in this case is demonstrated by the fact that the indictment itself (a 3-page document) expressly refers to the VA's "error" in disbursing the check to defendant. <u>See</u> Indictment ¶ 5.

**B.    Defendant's PTSD.**

Defendant does not intend on relying on PTSD as a defense to the charges and will therefore not be providing notice under Federal Rule of Criminal Procedure 12.2. Nevertheless, it is not appropriate to exclude "any reference" to PTSD, as the government requests. Defendant's PTSD is one of the core facts of this case, and its exclusion would lead to significant jury confusion and potentially prejudice defendant. Among other things, the jury would be left to speculate as to why defendant was entitled to government benefits in the significant amount of $234,000. Furthermore, all of the documentary evidence in the case would have to be redacted to exclude reference to defendant's PTSD. In short, excluding PTSD from this case entirely would create significant jury confusion and would likely prejudice Defendant. The government's motion on this issue should therefore be denied.

II. **THE COURT SHOULD GRANT DEFENDANT'S CROSS-MOTION *IN LIMINE* AND EXCLUDE EVIDENCE OF ALL EVENTS SUBSEQUENT TO DEFENDANT'S CASHING OF $99,999.10 CHECK SHORTLY AFTER JULY 31, 2003**.

The government should be precluded from presenting evidence addressing any events occurring after defendant deposited the VA check for $99,999.10, i.e., shortly after July 31, 2003. While the indictment paradoxically alleges both embezzlement and theft, this is plainly a case of alleged theft – and not embezzlement. This is so because the indictment does not allege that "the property lawfully came into the possession of care of the defendant." See, e.g., United States v. Burton, 933 F.2d (one element of embezzlement under 18 U.S.C. § 641 is that "the property lawfully came into the possession or care of the defendant, and the defendant fraudulently appropriated the money or property to his own use or the use of others"). Indeed, it alleges the opposite. See Indictment ¶ 5 (alleging that defendant "falsely claimed to one or more employees of the VA that he had never received one of the checks in th[e] amount to which he was entitled and obtained a replacement check, when in fact, as he well knew, he had received and deposited the original check").

As a theft case, the alleged criminal act– the *actus reus*– was complete upon defendant's cashing of the check on or about $99,999.10. The issue for the jury is whether or not defendant acquired the "replacement check" through fraudulent means, and with bad intent. See Morissette, 342 U.S. at 275-76. Thus, evidence of how defendant spent the money once he had allegedly fraudulently acquired the check is irrelevant and risks prejudice to defendant. For example, evidence that defendant subsequently purchased a car with the money, as the government seeks to present, see Gov. Mot. to Introduce Self-Authenticating Documents

8

Pursuant to Rule 902(11) (seeking admission of records from Sheehy Ford),[1] has no bearing on whether or not defendant "falsely claimed to the VA that he had never received" on of this installment checks. Accordingly, the crimes alleged in the indictment were complete the day defendant deposited the $99,999.10 check. Any evidence that defendant subsequently "blew" through the money is not just irrelevant but also prejudicial. See Fed. R. Evid. 401, 403.

## CONCLUSION

For the above-stated reasons, defendant respectfully submits that the Court deny the government's motion and grant the defendant's cross-motion *in limine*.

Respectfully submitted,

A.J. KRAMER

---

Jonathan S. Jeffress, Esq.
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Ste 550
Washington, D.C. 20004
(202) 208-7500
(202) 208-7515 (fax)

---

[1] Defendant has no objection in principle to the Government's Rule 902(11) Motion, but does by this Motion seek to exclude any evidence that does not pass Federal Rules of Evidence 402 and 403. For the reasons explained above, any evidence addressing how defendant spent the money from the alleged "replacement check" is inadmissible under either or both of those Rules.