IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 05-0418 (JR) |
| | ) | |
| GREGORY HURT, | ) | Oral Argument Requested |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GREGORY HURT'S MOTION FOR NEW TRIAL**

Defendant, Gregory Hurt, through undersigned counsel, hereby respectfully moves this Court for a new trial pursuant to Fed. R. Crim. P. 33.

Motions seeking new trial are to be granted "if the interests of justice so requires." Fed. R. Crim. P. 33(a). "Unlike a motion for judgment of acquittal, when ruling on a motion for a new trial 'the Court need not accept the evidence in the light most favorable to the government, and (it) may weigh the testimony and may consider the credibility of the witnesses.'" United States v. Howard, 245 F. Supp. 2d 24, 30 (D.D.C. 2003) (citing United States v. Edmonds, 765 F. Supp. 1112, 1118-19 (D.D.C. 1991)).

**BACKGROUND**[1]

On June 15, 2006, Mr. Hurt was convicted of Theft of Government Property, in violation of Section 641 of Title 18 of the United States Code. Mr. Hurt was convicted of either falsely stating that he had not received a check from the Veterans Administration ("VA") for

---

[1] The defense ordered trial transcripts but has not yet received them. Accordingly, the facts recited under this section are from the recollections of defense counsel, the defense investigator, and an intern with the Federal Public Defender who assisted with the trial.

$99,999.10, or wrongfully keeping the check after the check was erroneously issued to him. The verdict form did not specify which of the two alternate theories the jury relied on to convict Mr. Hurt and there is no way to know.

**A.    The Trial.**

    **1.    The December 19, 2002 Letters.**

The evidence presented at trial, during both the direct examination of government witnesses as well as cross-examination of those witnesses by the defense, showed that Mr. Hurt received at least two letters on December 19, 2002 from the Washington D.C. regional office of the VA. In the first letter, the VA notified Mr. Hurt that his benefits claim for Post Traumatic Stress Disorder ("PTSD") from defendant's service in the Vietnam War was being retroactively awarded. See Ex. A (December 19, 2002 award letter). The full award was for $234,360.10, to be paid in three installment checks. The letter also stated, however, that the VA was not awarding defendant an adjustment to the retroactive benefit for Mr. Hurt's wife, Edwina Strong, for before February 1, 1995 (an adjustment Mr. Hurt had sought). See id. The letter stated that "before we can pay you additional benefits for spouse prior to 2-01-95," Mr. Hurt must provide additional information to show that he had a marital relationship prior to February 1, 1995. Id.

The evidence showed that Mr. Hurt received a second letter on December 19, 2002 called a "Paid and Due Statement." See Ex. B (December 19, 2002 Paid and Due Statement). That letter listed an "Amount Paid" and an "Amount Due," but provided no explanation on how the amounts were calculated. In the Amount Paid section, the letter stated that Mr. Hurt had been paid $9,140.00 between February 1, 1995 and May 30, 1995. See id.

### 2. The Payments to Mr. Hurt

The evidence showed that Mr. Hurt received his retroactive award of $234,360.10 in three separate installment checks: (1) $99,999.10, sent January 3, 2003; (2) $99,999.00, send February 6, 2003; and (3) $34, 362.00, sent February 12, 2003. The evidence further showed that Mr. Hurt received an additional $99,999.10 check, following his visits to the VA, on or about July 31, 2003. See discussion, infra. Mr. Hurt's retention of the July 31, 2003 check was one of the government's two theories of the offense in this case. See Indictment.

### 3. Mr. Hurt's Visits to the VA

Diana Hannah, a government witness, testified that Mr. Hurt contacted the VA on several occasions between February - July 2003 attempting to receive increased benefits. Ms. Hannah testified that Mr. Hurt inquired into the possibility of increased compensation for his wife, in accordance with the instructions from the VA award letter Mr. Hurt received on or about December 19, 2002. See Ex. A. Ms. Hannah also testified that during one or more of Mr. Hurt's visits to the VA, Mr. Hurt presented the Paid and Due Statement to her. Ms. Hannah testified that she wrote her name and phone number on the back of the statement, which is what the documentary evidence showed. See Ex. C (reverse side of Paid and Due Statement). The defense subsequently argued that Mr. Hurt believed that the Paid and Due Statement reflected an unpaid sum owed to him of almost $10,000, and that Mr. Hurt's questions at the VA regarding a missing check related to the "Amount Paid" section of the Paid and Due Statement, and not to a replacement check for the $99,999.10 "replacement check," as the government contended.

### 4. The VA's August Letters to Mr. Hurt.

The government also presented the testimony of Bruce Britton, a VA employee whom the

defense would have called had the government not. Mr. Britton testified about two letters sent to Mr. Hurt. The letters concerned the check for $99,999.10 erroneously issued to Mr. Hurt in late July 2003. See Exs. D & E (letters of August 5 and 21, 2003). The second letter, dated August 21, 2003, presented Mr. Hurt with "two payment options." See id. The first option was that Mr. Hurt could "choose to pay the debt in full." Id. The second option was that Mr. Hurt could choose to "not pay the debt in full," in which case Mr. Hurt's "monthly VA disability compensation payments will be withheld until the debt is paid in full." Id. The letter further stated that if Mr. Hurt selected the second payment option, "automatic reduction of your benefits will begin 30 days from the date of this letter if we don't hear from you." Id.

Mr. Britton testified that, following the second letter, Mr. Britton received a phone message from Mr. Hurt in response to the letters. In his message, Mr. Hurt asked to schedule an appointment with Mr. Britton and left his phone number for Mr. Britton to contact him. See Ex. F (written note re: phone message from Mr. Hurt). Mr. Britton testified that, in his view, Mr. Hurt and himself would have resolved the matter of the erroneously issued $99,999.10 check had the VA's Office of Inspector General not taken over the matter shortly thereafter.

* * *

At the close of evidence, Mr. Hurt exercised his right not to present further evidence. This was done because the government's witnesses had already testified that, during Mr. Hurt's visits to the VA, Mr. Hurt was: (1) seeking increased benefits for his wife, in accordance with the December 12, 2003 letter from the VA; and (2) raising questions and concerns about the information reflected on the Paid and Due Statement. Furthermore, Mr. Britton had testified that Mr. Hurt called him to discuss the check. Mr. Britton further testified that he believed that he

and Mr. Hurt would have resolved the issue of the check, had the matter not been taken over by the VA's Office of Inspector General.

The defense argued in closing that the foregoing evidence established, among other things, that Mr. Hurt had a good faith basis for believing that the $99,999.10 check he received from the VA on or about July 31, 2003 was properly his. Furthermore, in calling Mr. Britton on the phone to schedule an appointment, Mr. Hurt was acting consistently with that good faith belief.

**B. Jury Instructions.**

Following the close of evidence, the parties and the Court discussed proposed jury instructions outside of the jury's presence. During the discussion of jury instructions, the defense asked for two jury instructions: (1) a "claim of right" instruction, and (2) a "scienter," or state of mind, instruction. With respect to the claim of right instruction, the defense submitted a model instruction taken from the "Redbook," Criminal Jury Instructions. See Ex. G (defendant's proposed claim of right instruction). The claim of right instruction provided in pertinent part:

> An essential element of the offense of theft is that the defendant had the specific intent to steal. You have heard evidence that the defendant believed that s/he had a right to take the property. If a person takes the property of another in the good faith belief that s/he has a right to take it, the specific intent element of theft is lacking. It does not matter whether the defendant actually had a right to the property. It is only necessary that s/he believed in good faith that s/he was entitled to or could legally take the property.

Ex. G (claim of right Instruction). A Note to the proposed instruction stated that "Indicia of abandonment can be the basis of instruction. Goddard v. United States, 557 A.2d 1315, 1317 (D.C. 1989) (defendant entitled to instruction on his claim that he actually and reasonably believed motorcycle was abandoned); Morissette v. United States, 342 U.S. 246 (1952)

5

(defendant honestly believed government property to have been abandoned)." Id.

The Court denied both of defendant's requested jury instructions. In denying the proposed claim of right instruction, the Court stated that the claim of right instruction was in effect a theory of defense instruction, and that the Court did not think there was enough evidence in the record to support a theory of the defense instruction. The Court stated that the defense had not presented evidence at trial to merit inclusion of the instruction.

The Court also declined to instruct the jury on the meaning of the word "knowingly," which was one area where defense counsel believed the Court could properly instruct the jury on the required state of mind for the offense of Theft of Government Property. The Court noted that the Redbook had deleted the instruction defining the word "knowingly." Defense counsel stated that a scienter instruction beyond the language in the substantive offense instruction was still requested and appropriate.

The jury instructions actually read to the jury addressed issues of good faith belief and state of mind only through the substantive jury instruction for "THEFT OF GOVERNMENT PROPERTY- Essential Elements." See Ex. H (theft of government property instruction). That instruction contained four paragraphs. The first paragraph set forth the elements of the offense, including the element that "defendant stole the money knowing it was not his and with the intent to deprive the owner of the use or benefit of the money." Id. In the final paragraph, the Court instructed the jury that to find guilt, the jury must find that "Mr. Hurt knew he was not entitled to the money he received and that he acted with the specific intent to deprive the government of the use of its money" but that "if you believe Mr. Hurt was unsure about the true ownership of the money," then the jury should acquit. Id. (emphasis in original).

**DISCUSSION**

**I.   THE DEFENSE'S CLAIM OF RIGHT INSTRUCTION WAS A THEORY OF DEFENSE INSTRUCTION THAT SHOULD HAVE BEEN GIVEN TO THE JURY.**

When discussing proposed jury instructions, the Court stated that the claim of right instruction was in fact a "theory of defense" instruction. The Court denied the instruction due to an inadequate evidentiary basis. The defense respectfully submits that the failure to give the instruction was error, and that Mr. Hurt should be granted a new trial on that basis.

The barrier to a "theory of defense" instruction is extremely low. See Levine v. United States, 261 F.2d 747, 748 (D.C. Cir. 1958). The defendant in a criminal case is entitled to have instructions presented to the jury relating to a theory of defense for which there is any foundation in the evidence. See Strauss v. United States, 376 F.2d 416 (5th Cir. 1967). A defendant is entitled to an instruction relating his theory of defense even though the evidence is weak, insufficient, inconsistent, or of doubtful credibility. See Tatum v. United States, 190 F.2d 612 (D.C. Cir. 1951), judgment aff'd, 249 F.2d 129 (D.C. Cir. 1957). The Court must give a defense instruction on any issue fairly raised by the evidence, whether or not consistent with the testimony or the defense trial theory. See Womack v. United States, 336 F.2d 959 (D.C. Cir. 1964); see also United States v. Bear, 439 F.3d 565 (9th Cir. 2006) (where defendant relies upon a theory of defense at trial, judge must instruct jury even where theory of defense instruction not requested and failure to do so was plain error)

In Levine, 261 F.2d 747, this Circuit recognized that the need to instruct the jury on the defendant's theory of the case applies to special defenses "as well to situations where special facts present an evidentiary theory which if believed defeats the factual theory of the

7

prosecution." Id. Failure to grant such an instruction was reversible error requiring a new trial. Id. at 75; see also Bear, 439 F.3d 565; United States v. Haney, 287 F.3d 1266 (10th Cir. 2002) (defendant is entitled to jury instructions on any theory of defense supported in the evidence and law and failure to so instruct is reversible error); United States v. Durham, 825 F.2d 716 (2d Cir. 1987) (reversible error to fail to instruct the jury regarding defendant's theory of the case).

In this case, the defense requested a claim of right instruction, which the Court deemed tantamount to a theory of defense instruction. Regardless of the label given to the instruction, and as the Court observed, the instruction included Mr. Hurt's theory of defense, which is that his retention of the July 31, 2003 check for $99,999.10 was based upon Mr. Hurt's good faith belief that the check sent to his home was rightfully his. There was plainly enough evidence in the record to support this theory of defense instruction, as, among other things, Mr. Hurt had been told by the VA in its August 21, 2003 letter that he could keep the money and simply have his benefits garnished.[2] The defense respectfully submits that the Court's decision not to instruct the jury concerning this defense was error, and Mr. Hurt should accordingly receive a new trial.

---

[2] A defendant need not present a case-in-chief in order to obtain a theory of defense instruction, or any other jury instruction, if the government's evidence is sufficient to raise the relevant legal defense. See United States v. Womack, 336 F.2d 959, 959 (D.C. Cir. 1964) (reversing trial court for failing to give "any instruction on any issue fairly raised by the evidence, whether or not consistent with the defendant's testimony or the defense trial theory); Johnson v. United States, 317 F.2d 127 (D.C. Cir. 1963) (recognizing that defense of entrapment may be raised following the government's case); United States v. Demma, 523 F.2d 981, 982 (9th. Cir. 1975). Here, while Mr. Hurt presented no formal defense, he benefitted from various sources of favorable evidence that were introduced in the government's case in chief – at least enough so to merit the requested instructions. See infra.

II. **EVEN IF NOT DEEMED A THEORY OF DEFENSE INSTRUCTION, THE COURT ERRED IN DENYING DEFENDANT'S PROPOSED JURY INSTRUCTION REGARDING CLAIM OF RIGHT.**

   A. **To Merit A Claim Of Right Instruction, The Evidence Need Only Be Sufficient To Allow A Rational Jury To Determine That The Defendant Believed He Was Entitled To The Property.**

Theft of government property, as codified in Section 641 or Title 18 of the United States Code, is a specific intent crime. See Morissette v. United States, 342 U.S. 246, 271 (1952); see also United States v. Rhone, 864 F.2d 832, 835 (D.C. Cir. 1989). Despite the statutory omission of an intent element, the Supreme Court has long recognized that the defendant must be shown to have taken the property with knowledge that it was not his. See Morissette, 342 U.S. at 271. A sufficient conviction under § 641 must stand upon proof that the defendant knew that he was stealing the property; the specific intent necessary for conviction under 18 U.S.C. § 641 "depends upon a state of mind, not upon a legal fact." Richardson v. United States, 403 F.2d 574, 576 (D.C. Cir. 1968) (emphasis added).

A defendant is entitled to a claim of right instruction, or any other recognized defense instruction, when "there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988) (citing Stevenson v. United States, 162 U.S. 313 (1896)). In Mathews, the Supreme Court recognized that the defendant is entitled to an entrapment defense whenever there is evidence such that a reasonable jury could find entrapment. See id. Other circuits have already applied the Mathews/Stevenson rule to alleged violations of 18 U.S.C. § 641. See, e.g., United States v. Heathershaw, 81 F.3d 765, 769 (8th. Cir. 1996). In Heathershaw, the Eighth Circuit reversed the trial court for failure to give a claim of right instruction, among other errors. Id. The Heathershaw court reasoned that a belief of the

defendant of a right to possess the property at issue negates the intent element, and denial of the claim of right instruction was therefore error. See id.

In Richardson, 403 F.2d 574, the D.C. Circuit discussed the importance of separating what the evidence suggests the defendant believed, from what was actually correct under the applicable law. See id. at 576. The Richardson court reversed the trial court for failing to grant a claim of right instruction, despite the fact that the defendant in Richardson had no legally enforceable right to the property taken. Id. The Court of Appeals also rejected the notion that granting a claim of right instruction would encourage self-help. Id.

Here, unchallenged testimony by various witnesses adequately supports the defense position that Mr. Hurt believed he could keep the July 31 2003 check for $99,999.10 –at least enough so to merit the claim of right instruction. The evidence indisputably showed that Mr. Hurt came into the VA office with questions about compensation for his wife and with a question about the Paid and Due Statement sent to him by the VA on December 19, 2002. That evidence supported Mr. Hurt's defense that he was acting in good faith when he kept the $99,999.10 check, because he believed that the check was sent in response to his complaints and inquiries. Accordingly, it was error for the Court to fail to instruct the jury that it must acquit Mr. Hurt if it found that Mr. Hurt "believed in good faith that he was entitled [to] the property." Ex. G (defendant's proposed claim of right instruction).

Finally, a "Note" to defendant's proposed claim of right instruction states, inter alia, that "Indicia of abandonment [of the property] can be the basis of instruction," and then cites cases. See Ex. G. That Note is directly relevant to the VA's August 25, 2003 letter, which the defense repeatedly argued as constituting a relinquishment of the July 31, 2003 "replacement check" for

$99,999.10. The Note only reinforces the fact that the claim of right instruction proposed by the defense was appropriate and would have clarified the legal issues for the jury.

> **B.   Because the Court Refused The Defense's Proposed claim of right Instruction, The Jury Was Never Told That A Claim Of Right Defense Can Be Valid Despite The Reasonableness or Unreasonableness Of The Defendant's Good Faith Belief.**

The unreasonableness of a defendant's belief of ownership is **not** a valid reason to refuse a claim of right instruction. See United States v. Rhone, 864 F.2d 832, 835 (D.C. Cir. 1989) (recognizing that to prove theft, the government must prove the necessary criminal intent, and the defendant "is not guilty regardless of whether (the defendant's) mistaken understanding of the law was objectively reasonable" (emphasis added)); see also Richardson, 403 F.2d at 576.

The fact that Mr. Hurt's belief that he was rightfully entitled to the July 31, 2003 check need not have been a reasonable one was never conveyed to the jury, due to the exclusion of defendant's claim of right instruction. If the proposed claim of right instruction had been given, the jury would have known that "[i]t does not matter whether the defendant actually had a right to the property. It is only necessary that he believed in good faith that he was entitled to . . . the property." Ex. G. This would have conveyed, at least in part, that the accuracy of Mr. Hurt's belief in his right to the $99,999.10 check was in no way dispositive of the issue of whether Mr. Hurt believed the check was rightfully his.

By contrast, the substantive instruction on Theft of Government Property that was read to the jury does not contain any language whatsoever informing the jury that the defendant's belief in his right to the allegedly stolen property need not be a reasonable one. The omission of that instruction, and the related, crucial differences between the claim of right instruction and the

substantive instruction for theft of government property, raises very serious concerns about the manner in which the jury was instructed and alone merits a new trial.

**III.   MR. HURT IS ENTITLED TO A NEW TRIAL BECAUSE THE JURY INSTRUCTIONS DID NOT ADEQUATELY EXPLAIN THE REQUIRED SCIENTER OR STATE OF MIND TO THE JURY.**

The defense requested that the Court give a state of mind instruction to the jury; specifically, the defense requested an instruction on the definition of "knowingly." The Court declined to give any state of mind instruction beyond what was already contained in the substantive "THEFT OF GOVERNMENT PROPERTY- Essential Elements" instruction. The defense respectfully submits that the failure of the Court to instruct on the definition of the word knowingly or to provide any other state of mind instruction beyond the substantive offense instruction was error.

The term "knowingly" in a criminal statute has a meaning that could easily be explained to the jury, with the proper instruction. This Circuit has noted that the term "knowingly. . . means that the defendant realized what she was doing and was aware of the nature of her conduct and did not act through ignorance, mistake, or accident." United States v. Alston-Graves, 435 F.3d 331, 337 (D.C. Cir. 2006) (citing United States v. Graham, 431 F.3d 585, 590 (7th Cir.2005)). This definition is one that needs to be clarified for a lay juror, and the failure to do so may certainly be problematic for jurors, even though the definition of knowingly appears to have been removed from the Redbook instructions. See id. (recognizing that even instructions taken from Federal Jury Practice and Jury Instructions, 5th are not guaranteed to solve confusion). The need for jury instructions to be clear and fit the specific facts of a case is well-established. Id., 431 F.3d at 341.

Other jurisdictions have recognized that the need for various "scienter"-type instructions may not be necessary so long as the court gives some type of "good faith" instruction. The Ninth Circuit recognized that "a judge may reject a defendant's proposed instruction if the other instructions, viewed in their entirety, adequately cover that theory." United States v. Sayakhom, 186 F.3d 928, 939 (9th Cir. 1999)(citing United States v. Govan, 152 F.3d 1088, 1093 (9th Cir.1988). The Sayakhom court recognized that no "public authority defense" instruction was necessary, but only because the trial court had given a detailed good faith instruction, clearly explaining to the jury that good faith was a complete defense, that erroneous beliefs did not negate good faith, and an error in management or carelessness would not negate good faith. See Sayakhom, 186 F.3d at 940.

The Court, faced with at least some evidence that Mr. Hurt (1) believed he was asking for a check based on the Paid and Due Statement, and not a missing $99,999.10 check; and/or (2) thought he could rightfully keep the July 31, 2003 check, should have read an instruction explaining the significance of *mens rea* terms such as "knowingly" to the jury. Mr. Hurt received no "good faith" instruction that would have negated the need for a clear scienter instruction. Here, the jury should have been provided with an explanation of how the letter from the VA could possibly negate the intent element of 18 U.S.C. § 641. The defense respectfully submits that the Court's failure to give a more in-depth scienter instruction, including the definition of the word knowingly, was error.

WHEREFORE, Defendant Gregory Hurt respectfully requests that this Court grant his motion for new trial.

> Respectfully submitted,
> A.J. KRAMER
> Federal Public Defender
>
> _____/s/_____
> Jonathan S. Jeffress
> Assistant Federal Public Defender
> 625 Indiana Avenue, N.W., Ste 550
> Washington, D.C. 20004
> (202) 208-7500

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Crim. No. 05-0418(JR) |
| ) | |
| **GREGORY HURT,** ) | |
| ) | |
| **Defendant.** ) | |

### ORDER

Upon consideration of Defendant's Motion For New Trial, any opposition thereto, and for good cause shown, it is hereby

**ORDERED** that the Motion is **GRANTED**.

_____
JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE

_____
DATE

Jonathan S. Jeffress, AFPD
Michael Atkinson, AUSA