339

1   you want me to address the case?

2       THE COURT: I want to know whether there's going to be
3   any defense case.

4       MR. JEFFRESS: Any defense case? We're still in
5   discussions. We should have a decision on that momentarily.

6       THE COURT: I don't want to pressure you to make that,
7   but we do have a jury waiting. So we need to know what to do
8   with this jury.

9       MR. JEFFRESS: Your Honor, if we could get five more
10  minutes. I think we're just kind of still at a loggerheads
11  about an issue.

12      THE COURT: Are we at loggerheads about anything but
13  the defendant's own testimony?

14      MR. JEFFRESS: No.

15      THE COURT: So that would be it?

16      MR. JEFFRESS: That would be it. Just that one
17  witness.

18      MR. ATKINSON: There's just one thing I forgot. We
19  still haven't signed the stipulation as to signature. We can do
20  that now.

21      MR. JEFFRESS: And Your Honor, on instructions I would
22  just add, since the government has been able to -- this is a
23  very basic instruction that I think is justified. I don't know
24  if the government has any objection.

25      MR. ATKINSON: Yeah, we have an objection.

340

1    MR. JEFFRESS:  It just goes to his good faith belief
2  that the money had come to him correctly.
3    THE COURT:  Well, I congratulate myself on the instinct
4  that is now confirmed by looking at the way this instruction is
5  codified in the Red Book.  It is codified as a theory of defense
6  instruction.
7    MR. JEFFRESS:  Right.
8    THE COURT:  And like all theory of defense
9  instructions, it needs an evidentiary basis in the record.  I
10 believe there is as yet no such evidentiary basis in the record
11 for a claim of right instruction.
12   MR. JEFFRESS:  The only thing I would say about that is
13 Bruce Britton's letter.  I mean, if they're saying that he held
14 on to it wrongfully, and then he gets Bruce Britton's letter;
15 and Bruce Britton's letter tells him, you can keep it.
16   THE COURT:  You can argue that all day long, but the
17 good faith belief is a subjective belief of an individual
18 person.  It's not conveyed by somebody else.
19   MR. JEFFRESS:  But presumably, if the letter reached
20 Mr. Hurt and he read the letter - which there's no indication he
21 didn't; it went to his home - then he would have a belief, a
22 good faith belief, that he could retain the property.
23   THE COURT:  As I've said, you can argue this all day
24 long, but without more evidence in the record, I'm not going to
25 give this instruction.

1           MR. JEFFRESS:  Okay.  Thank you.  And then, Your

2   Honor --

3           THE COURT:  And strike "all day long."  Strike the

4   words "all day long" from what I just said.  You may not argue

5   all day long.

6           MR. JEFFRESS:  I promise not to argue all day long.

7           Your Honor, is there a knowingly instruction in yet?

8           THE COURT:  Look at the Red Book.  The Red Book says

9   the knowingly instruction was taken out of the Red Book years

10  ago.  We don't do it anymore.  It's built in to the instruction.

11  There is a state of mind instruction.  But knowingly, we don't

12  do it anymore.

13          MR. JEFFRESS:  When I looked through these, I didn't

14  see anything on scienter, and I might be missing that.

15          THE COURT:  And, by the way, it surprised me somewhat

16  to learn that -- and this may go right to the core of one of

17  your problems here.  The standard instruction 4.56, on theft

18  from the government, theft of United States government property,

19  includes the requirement that the jury find proof beyond a

20  reasonable doubt, et cetera, that the defendant stole the money

21  with the intent to deprive the owner of the use or benefit.

22          And then there's an intent instruction saying, you

23  can't look into the workings of the human mind.  But note the

24  comment says, "Knowledge that the stolen property belonged to

25  the United States is not an element of this offense."

1          MR. JEFFRESS: That it belonged to the United States,
2   correct.
3          THE COURT: Right.
4          MR. JEFFRESS: So it could belong to somebody else.
5   But he doesn't have to know, hey, this is the government's
6   property. He could say, hey, this is somebody else's, but I'm
7   getting it wrongly. He doesn't have to know --
8          THE COURT: You don't want me to go back to the
9   DC code, do you?
10         MR. JEFFRESS: No. Your Honor, I'm not going to argue
11  that. I'm not going to argue that he didn't know it was
12  government property. I mean, that's obviously -- that's not
13  supported by the facts or anything like that.
14         But the knowingly, generally, it's a specific intent
15  offense. There's no question about that, I think, because the
16  Morissette case, which is a Supreme Court case from the '50s, a
17  classic case on specific intent, was a 641 case.
18         And knowingly, I don't doubt what Your Honor said
19  that's been taken out. I know we always give it in possession
20  cases, or at least in the other courts that I've been in front
21  of it's generally given, just a definition of it. And I think
22  that is certainly an element of the offense, that he did it
23  knowingly, from the Morissette case.
24         So we would ask for a scienter instruction.
25         MR. ATKINSON: Judge, the word "knowing" is in the

1    elements on page 25 of your instruction. But the DC code -- the
2    Red Book has decided they're not going to give that type of
3    instruction anymore.
4            MR. JEFFRESS: Your Honor, actually, I've got another
5    case --
6            THE COURT: Somebody got a copy of Morissette?
7            MR. ATKINSON: I do, judge.
8            THE COURT: My goodness, an opinion by Mr. Justice
9    Jackson. Do you know that Mr. Justice Jackson never went to law
10   school?
11           MR. JEFFRESS: I think I had heard that before.
12           THE COURT: And I'm informed also that he didn't even
13   go to college, or graduate from college.
14           MR. ATKINSON: That makes two of us.
15           THE COURT: I haven't read that opinion for years.
16   It's absolutely a thing of beauty.
17           MR. JEFFRESS: It's a great one on specific intent.
18           THE COURT: I don't think it lengthens the instruction,
19   though.
20           MR. JEFFRESS: I guess, Your Honor, these
21   instructions -- although knowingly, that he knowingly did it, is
22   clearly part of the offense, these don't provide the jury with a
23   definition of what knowingly means.
24           And I guess maybe the Red Book -- I can only assume,
25   based on what government counsel said, the Red Book made the

1   decision to take it out because people knew what it means.  But
2   the knowingly instruction, we always get it in the 922(G) cases
3   and so forth, and I always thought it was helpful for the jury
4   on the specific intent required.
5        THE COURT:  You mean, the 922(G) that says knowingly
6   means intentionally, willfully, not by accident, that language?
7        MR. JEFFRESS:  Exactly.
8        THE COURT:  I'm going to leave it as it is,
9   Mr. Jeffress.  I'm sure you will embroider and filigree the word
10  "knowing" and "intentional" to the jury to great effect.  But
11  the 922(G) language or CPWL language that says consciously,
12  voluntarily, and on purpose, and not mistakenly, accidentally,
13  or inadvertently, is the kind of language that goes with, oh,
14  gee, I didn't know there was a gun in my belt.  It's not the
15  kind of intent that goes with transferring bank accounts,
16  endorsing checks, and taking deliberate documented acts that are
17  shown here.
18       You've got to -- you may be able to convince the jury
19  that your client thought he was -- that manna that had fallen
20  from the heaven, or that the Veterans Administration had seen
21  the error of its ways and was giving him money for his wife, or
22  that they misunderstood him when he really wanted $9,000 and
23  they gave him $100,000, or that he was only squirrelling this
24  money away in another place until he straightened things out
25  with Mr. Britton, who never bothered to call him back.  All of

1   those arguments are open to you, but I don't think it changes
2   the instruction of knowing.
3           MR. JEFFRESS:  Your Honor, that's fine.  I do plan on
4   arguing in front of the jury, though, that Mr. Hurt must have
5   had -- it's required under the law that when Mr. Hurt was at the
6   VA, he had the specific intent to defraud the VA, and I think
7   that's clear from the Morissette case and the 641 --
8           THE COURT:  You can certainly say that.
9           MR. JEFFRESS:  Okay, thank you.
10          THE COURT:  Now, do you want some more time to talk to
11  your client and tell me whether there's going to be a defense
12  case or not?
13          MR. JEFFRESS:  Yes, please, Your Honor.
14          THE COURT:  Okay.  Tell me -- why don't you just step
15  out in the hall or go out to a jury room.  He's not under any
16  restraint.  Not a jury room.  I mean a witness room.
17          (OFF THE RECORD.)
18          MR. JEFFRESS:  Your Honor, I believe we're going to
19  rest.
20          THE COURT:  All right.  Has the defendant been advised
21  of both of his right to testify and of his Fifth Amendment right
22  not to testify?
23          MR. JEFFRESS:  Yes, Your Honor.
24          THE DEFENDANT:  Yes, sir.
25          THE COURT:  Actually, I would like you to step up here,