## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 05-418 (JR)** |
| | ) | |
| **GREGORY HURT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPPOSITION OF THE UNITED STATES
## TO DEFENDANT'S MOTION FOR NEW TRIAL

The United States, by and through its attorney, the United States Attorney in and for the District of Columbia, hereby submits this Opposition to the Defendant's Motion for New Trial. As demonstrated further below, this Court properly declined to instruct the jury on a theory of defense instruction based on claim of right. The Defendant presented no evidence that he believed he was entitled to $99,999.10 when he negotiated a check for that amount in August 2003 from the Department of Veterans Affairs ("VA") and transferred the proceeds of that check into a new bank account after the VA sent him a letter informing him of the VA's error in issuing the check. The Court also properly declined to define the term "knowingly" to the jury. Instead, consistent with the Red Book, the Court included the precise mental state required for the offense within the instruction for that offense. As a result, the Defendant's Motion for New Trial should be denied.

**FACTS**

On November 23, 2005, the Grand Jury returned a two-count Indictment against the defendant charging him with one count of theft of government property, in violation of 18 U.S.C. §§ 641 and 2 (Count One), and one count of first degree theft under the laws of the District of Columbia, in violation of D.C. Code §§ 22-3211 and 3212(a) (Count Two). Trial was held on June 13-14, 2006. During the trial, the Government presented testimony from three current VA employees (Diana Hannah, James Wear and Bruce Britton), one former VA employee (Janet Stone), and Special Agent Andrew Sekala of the Federal Bureau of Investigation.

There was no dispute at the trial that on December 19, 2003, the VA informed the Defendant that he had been awarded a lump sum amount of $243,500.10 for retroactive benefits for post-traumatic stress disorder. *See* Defendant Gregory Hurt's Mot. For New Trial ("Def. Mot.") at Exhibit B. Because the VA had already paid the Defendant $9140.00 of that lump sum amount, the VA owed him $234,360.10. *Id.* The parties stipulated at trial that the VA paid the Defendant the $234,360.10 in three separate checks, including the first of the three checks issued on January 3, 2003 in the amount of $99,999.10. The parties also stipulated that the VA issued him a fourth check for $99,999.10 on July 31, 2003. The defendant was charged with stealing the fourth check.

The Government presented evidence that the Defendant obtained the fourth check through false pretenses and attempted to hide the proceeds after the VA realized its mistake in issuing him the fourth check. The two VA witnesses who spoke directly with the Defendant, Ms. Hannah and Mr. Wear, testified that the Defendant (falsely) told them that the VA owed him approximately $99,999.10 because he had not received his original check. The VA employee

2

who issued the fourth check, Mr. Britton, testified that he did so based upon the Defendant's statement to Mr. Wear that the Defendant had not received his original check for $99,999.10.  On August 5, 2003, Mr. Britton sent a letter to the Defendant stating that the VA erroneously issued the fourth check to the Defendant because "you advised us that you had not received this check." *See* Def. Mem. at Exhibit D (letter from Bruce Britton to Gregory Hurt).  On August 14, 2003, unbeknownst to the VA, the Defendant transferred $160,000 from his bank account at Andrews Federal Credit Union (an account known to the VA) to a new account at SunTrust Bank (an account unknown to the VA).  *See* Exhibits A and B attached hereto.  On August 21, 2003, before the VA learned that the Defendant had transferred the funds out of his account at Andrews Federal Credit Union, Mr. Britton sent a second letter to the Defendant stating that the VA erroneously issued the fourth check to the Defendant "because you told us that you did not receive your check dated 01-03-03 in the amount of $99,999.10," and informing the Defendant that he could repay the funds in full or in installment payments.  *See* Def. Mem. at Exhibit E (letter from Bruce Britton to Gregory Hurt).

At the close of all the evidence on June 14, 2006, the Court, *sua sponte*, dismissed Count Two charging first degree theft under the laws of the District of Columbia pursuant to Rule 29 of the Federal Rules of Criminal Procedure based on the conclusion that the charge was duplicitous of Count One.  The next day, June 15, 2006, the jury found the defendant guilty of theft of government property.  The remaining facts relevant to the instant Motion are set forth below in response to the Defendant's legal arguments.

**ARGUMENT**

I.    **The Court properly declined to give a jury instruction on the Defendant's theory of the case based on claim of right.**

The Defendant's contention that this Court erred in failing to give a claim of right instruction, *see* Def. Mot. pp. 7-8, ignores the fact that he presented no evidence to support such an instruction.  At the close of the evidence, the Defendant requested the following jury instruction on "claim of right":

> An essential element of the offense of theft is that the defendant had the specific intent to steal.  *You have heard evidence that the defendant believed that he had a right to take the property.*  If a person takes the property of another in the good faith belief that he has a right to take it, the specific intent element of theft is lacking. It does not matter whether the defendant actually had a right to the property.  It is only necessary that he believed in good faith that he was entitled to or could legally take the property.

Def. Mot. at Exhibit G (emphasis added).  The Court declined to give the instruction, which equated to a theory of defense instruction, because the Defendant failed to provide an adequate evidentiary basis for the instruction.  *See* Trial Transcript ("TT") at 340-41 (attached Defendant Gregory Hurt's Notice of Filing (filed Aug. 10, 2006)).  Given that there was no evidence to support a claim of right instruction, the Court's ruling was correct.

The right to a theory of defense instruction "flows from a threshold finding by the trial court that the proffered defense is a 'recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.'"  *Durham v. United States*, 743 A.2d 196, 200-01 (D.C. 1999) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)); *see also Levine v. United States*, 261 F.2d 747, 749 (D.C. Cir. 1958) (theory of defense instruction must be "supported by the evidence") (quoting *Marson v. United States*, 203 F.2d 904, 912 (6th Cir.

1953)).  Likewise, a trial judge may refuse to give a theory of defense instruction that has "no factual or legal basis."  *Carter v. United States*, 531 A.2d 956, 959 (D.C. 1987); *see also McFerguson v. United States*, 770 A.2d 66, 77 (D.C. 2001) (failure to give instruction on defendant's theory of the case proper "when no testimony was presented" to support defense theory).

Contrary to Defendant's contention, there was no evidence that "he believed that he had a right to take the property," *i.e.*, the fourth check for $99,999.10 issued by the VA on July 31, 2003.  *Id.*  In the instant Motion, the defendant does not point to any direct evidence as to why he believed he had a right to take $99,999.10.  Instead, before the VA issued the fourth check, the only direct evidence of the reasons why the Defendant believed he had a right to $99,999.10 were his statements to the VA employees that he had purportedly not received a check for that amount.[1]  After the VA issued the fourth check on July 31, 2003, there was no direct evidence of the Defendant's state of mind as to why he believed he had a right to take $99,999.10 of the government's money.  That is, no one testified to what the Defendant was thinking when he negotiated the fourth check and transferred the proceeds of that check into a new bank account.

In the absence of direct evidence, the Defendant argues that the jury could infer that he thought he had a right to $99,999.10 from three circumstances: (1) before he received the fourth check, the Defendant raised questions with Ms. Hannah about increased benefits for his wife, *see* Def. Mem. at 3; (2) before he received the fourth check, he presented to Ms. Hannah a Paid and

---

[1]      As stated above, both VA witnesses who spoke to the Defendant – Ms. Hannah and Mr. Wear – testified that the only reasons given to them by the Defendant for his belief in July 2003 that the VA owed him $99,999.10 were his statements that he had not received a check issued to him in the amount of $99,999.10.  No witness gave any other reason for why the Defendant thought he was owed $99,999.10.

Due Statement, *see id.* at Exhibit B, which the VA had sent to the Defendant showing that the VA had already paid the Defendant $9140 of the $243,500.10 he was owed in retroactive benefits; and (3) after he had already negotiated the fourth check and transferred the money into a different bank account, the Defendant left a voice mail message for the VA's Bruce Britton asking to schedule an appointment for a meeting, *id.* at 4. As demonstrated further below, those circumstances provided no evidence that the Defendant believed he had a right to negotiate a check for $99,999.10 and transfer those funds into a new account in August 2003.

First, the Defendant's conversations with Ms. Hannah about increased compensation for his wife did not evidence the Defendant's belief that he had the right to keep $99,999.10. Ms. Hannah testified, among other things, that the Defendant inquired generally into the possibility of increased compensation for his wife. *Id.* at 3. The jury, however, could not reasonably infer from that testimony that the Defendant believed he had a right to keep $99,999.10. Ms. Hannah did not testify that the Defendant told her that he thought he was owed $99,999.10 in increased compensation for his wife. There was, in fact, no testimony from Ms. Hannah (or any other witness) that quantified the additional benefits that the Defendant may have believed the VA purportedly owed to the Defendant in increased compensation for his wife. There was, in short, no nexus established between the Defendant's questions to Ms. Hannah about increased compensation for his wife and what the Defendant thought when he received, negotiated and later transferred the proceeds from the fourth check for $99,999.10.

Second, the Defendant's presentation to Ms. Hannah of a Paid and Due Statement provided no evidence that the Defendant believed he had a right to keep $99,999.10. According to the Defendant, the defense "argued" that the Defendant's questions to the VA employees

about a missing check related to the "Amount Paid" section of the Paid and Due Statement

($9140), and not to a request for a fourth check in the amount of $99,999.10.  *See* Def. Mem. at

3.  That argument, however, lacked any evidentiary support.  Both VA witnesses who met with

the Defendant – Ms. Hannah and James Wear – testified that they could not recall discussing

with the Defendant the $9140 reflected in the "Amount Paid" section of the Paid and Due

Statement.  As a result, there was no evidence that the Defendant ever discussed the $9140 with

any VA employees.  Nor was there any evidence that the Defendant thought he could keep the

fourth check because of his purported discussion about $9140.  The disparity, moreover, between

$9140 and $99,999.10 did not allow the jury reasonably to infer that the Defendant thought that

he was entitled to keep $99,999.10 because he had purportedly raised questions about $9140.

*See Randolph v. Adams*, 2006 WL 2032542 at *28, No. C 02-4196 (N.D. Cal. July 18, 2006)

("huge disparity between the value of the alleged debt [$320], and the property appellant took

[$5800], undermines any reasonable inference that appellant had a bona fide belief that he had a

legal claim to the property he took").

      Third, the August 21, 2003 letter sent by the VA to the Defendant and the ensuing phone

call to Mr. Britton could not inform the jury about what the Defendant thought when he

negotiated the fourth check in early August 2003 and, shortly thereafter, transferred the proceeds

into a new bank account.  As an initial matter, there was no evidence that the Defendant ever

learned about any payment options discussed in the August 21, 2003 letter because there was no

evidence that he called Mr. Britton in response to that letter.  Mr. Britton sent two letters to the

Defendant: (1) a letter dated August 5, 2003, which did not discuss payment options and

informed the Defendant that he needed "to immediately return the check issued on July 28, 2003

and contact BRUCE BRITTON," *see* Def. Mem. at Exhibit D; and (2) a letter dated August 21,

2003, which discussed payment options and requested that the Defendant call Mr. Britton, *id.* at

Exhibit E. Although the Defendant called Mr. Britton some time after the VA sent out those

letters, there was no evidence as to which of the two letters the Defendant was calling about.

Further, by the time the VA sent out the August 21, 2003 letter, the theft was already complete.

That is, by August 21, 2003, the Defendant had already (1) negotiated the fourth check, and (2)

transferred the proceeds out of a bank account known to the VA into a new account at a different

bank unknown to the VA. Because the Defendant had already acted upon his criminal intent

before August 21, 2003, his conduct after that date was legally irrelevant.

Although the Defendant correctly asserts that theft of government property is a specific

intent crime, and "specific intent depends upon a state of mind," *see* Def. Mem. at 9 (quoting

*Richardson v. United States*, 403 F.2d 574, 576 (D.C. Cir. 1968)), the Defendant offered no

evidence at trial as to his state of mind on the two operative dates: (1) the date he negotiated the

fourth check; and (2) the date he transferred its proceeds from one bank account known to the

VA to a new account unknown to the VA. Unlike the numerous cases cited by the Defendant

where defendants actually offered some evidence on their state of mind, here there was no such

evidence.[2] At bottom, there was no evidence that the Defendant believed the VA owed him

---

[2]       *See* Def. Mem. at 9-10 (citing *Mathews v. United States*, 485 U.S. 58, 61 (1987)
(defendant testified to his state of mind in receiving funds); *Morissette v. United States*, 342 U.S.
246, 248-49 (1951) (defendant testified to his state of mind in removing munitions); *United
States v. Heathershaw*, 81 F.3d 765, 767 (8th Cir. 1996) (defendant testified to his state of mind
in removing government property); *Richardson v. United States*, 403 F.2d at 169 (defendant
testified to his state of mind)). This is not to say that the Defendant, here, necessarily had to
testify to his state of mind to obtain the instruction. But, in the absence of his testimony, another
witness had to provide evidence as to why the Defendant thought the VA owed him $99,999.10
(other than an allegedly missing check) to warrant the instruction and no one did.

$99,999.10 for any reason other than an allegedly missing check.[3]  As a result, the Court properly

declined to give a theory of defense instruction based on claim of right.[4]

**II.    The Court properly instructed the jury on state of mind.**

Although recognizing that the definition of knowingly "appears to have been removed

from the Redbook instructions," *see* Def Mem. at 12, the Defendant contends that the Court erred

in failing to define the term "knowingly" for the jury.  The Defendant did not identify any

authority, because there is none, requiring the Court to define the term "knowingly" for the jury

in the context of a charge under 18 U.S.C. § 641.  Because the instruction included the precise

mental state required for the offense, the Court properly instructed the jury.

The Red Book has recognized that "stock 'specific' and 'general intent' instructions

should be avoided in favor of instructions that precisely define the requisite mental state of the

particular crime charged."  *See* Bar Association of the District of Columbia's <u>Criminal Jury</u>

<u>Instructions</u> (4th ed. rev. 2002) (The Red Book), Instruction 3.01, Comment at p. 199.

---

[3]        The Defendant's reliance on a theory of abandonment to support his request for an
instruction on claim of right, *see* Def. Mem. at 10-11, is similarly misplaced.  The letter issued by
the VA on August 21, 2003 is not – and cannot be – evidence of abandonment.  As stated above,
even assuming that the Defendant received, read and relied upon the letter, he had already formed
his criminal intent and acted upon it by the time the VA issued the letter.  Further, the letter's
demand that the Defendant *repay* the $99,999.10 in full or in installments is hardly evidence that
the Government intended to abandon the $99,999.10 erroneously paid to the Defendant.  *See*
*Peyton v. United States*, 275 A.2d 229, 230 (D.C. 1971) ("An abandonment must be made to
appear affirmatively by the party relying on it, and an intention to abandon will not ordinarily be
presumed, and this is particularly true if the conduct of the owner can be explained consistently
with a continued claim.  Proof of abandonment must be made the one asserting it by clear,
unequivocal and decisive evidence.").

[4]        For the same reasons, the reasonableness or unreasonableness of the Defendant's
belief, *see* Def. Mem. at 11-12, was legally irrelevant since the Defendant failed to satisfy the
initial prerequisite of adducing some evidence that he believed the VA owed him $99,999.10.

Consistent with that approach, the Red Book deleted the instruction for "knowingly" in 1993 and "included the precise mental state required for each offense within the instructions for that offense." *Id.* Instruction 3.03. The instructions provided by the Court on the essential elements of 18 U.S.C. § 641 properly instructed the jury on the mental state required to prove that offense. *See* Jury Instructions at p. 17 ("Theft of Government Property - Essential Elements");[5] *see also United States v. Aguilar*, 967 F.2d 111, 112 (5th Cir. 1992) (setting out elements of crime).

Nor did the defendant suffer any identifiable prejudice from this purported defect. The sole prejudice identified by the Defendant from the failure to define the term knowingly is that "the jury should have been provided with an explanation of how the [August 21, 2003] letter from the VA could possibly negate the intent element of 18 U.S.C. § 641." *See* Def. Mem. at 13. The Defendant failed to state in what way defining the term "knowingly" would explain to the jury how the August 21, 2003 letter negated intent. Nor could there be any prejudice from this purported defect given that the Defendant's counsel argued in summation that the letter negated intent. In any event, no definition of the term "knowingly" could logically or legally explain how a letter dated weeks after the crime had been committed – two weeks after the Defendant negotiated the fourth check and one week after he transferred the proceeds from that check into a new account – could negate the intent element. As a result, the Court properly instructed the jury on the *mens rea* element of 18 U.S.C. § 641.

---

[5]    The Court instructed the jury, for instance, that the Government had to prove beyond a reasonable doubt that "the defendant stole the money knowing that it was not his and with the intent to deprive the owner of the use or benefit of the money," but that "if you believe that Mr. Hurt was unsure about the true ownership of the money, or if you believe that he did not act to deprive the government of its interest in the money, you must acquit him of the crime of theft of government property." *Id.*

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that this Court deny the

Defendant's Motion for a New Trial.

                                 Respectfully submitted,

                                 KENNETH L. WAINSTEIN
                                 ATTORNEY OF THE UNITED STATES
                                 IN AND FOR THE DISTRICT OF COLUMBIA


BY:   _____
                                 Michael K. Atkinson
                                 Assistant United States Attorney
                                 United States Attorney's Office
                                 Fraud & Public Corruption Section
                                 555 4th Street, N.W.
                                 Washington, D.C.  20530
                                 (202) 616-3702
                                 (202) 307-2304 (fax)


DATED: August 15, 2006

11