IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 05-0418 (JR) |
| ) | |
| GREGORY HURT, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT GREGORY HURT'S MEMORANDUM IN AID OF
SENTENCING AND MOTION FOR DOWNWARD DEPARTURE**

Defendant, Gregory Hurt, through undersigned counsel, hereby respectfully submits this Memorandum in Aid of Sentencing and Motion for Downward Departure.[1] Upon consideration of all of the sentencing factors as applied to this case, including the Guidelines, Mr. Hurt respectfully submits that he should be sentenced to time served (approximately 2 months) plus a term of supervised release, with a condition that the first 90-120 days of his supervised release be spent at an inpatient drug treatment facility.

**BACKGROUND**

**A.    Gregory Hurt.**

Mr. Hurt is 59 years old. He has been married to his wife, Edwina Strong, for the last 25 years. Mr. Hurt is the father of seven children, who range in age from 22 years old to 11 years old.

---

[1]   Mr. Hurt currently has a Motion for a New Trial pending before the Court. The defense respectfully submits that the Court should grant that Motion, for the reasons stated therein. This Memorandum is submitted in the event this matter does proceed to sentencing. In the event that Mr. Hurt is sentenced to a term of incarceration, the defense will be seeking bond pending appeal, based on the issues raised in his New Trial Motion.

When Mr. Hurt was 18 years old and just out of high school, he volunteered to serve his country in the Vietnam War. He served in the United States Marine Corps from March 15, 1966 until he was honorably discharged on February 27, 1970. While he was in Vietnam, Mr. Hurt's Military Occupation Specialty was as a cook. See Ex. 1 (Veteran's Administration Compensation and Pension Exam Report) at 1. On several occasions, Mr. Hurt was in truck convoys that came under heavy enemy fire. See id. Mr. Hurt witnessed friends and fellow soldiers maimed and killed. See id. In addition, while stationed in Dong Ha, Pue Bi, and Quan Tri, Mr. Hurt was housed in compounds that came under frequent mortar attack. See id. Mr. Hurt also witnessed the torture of a Vietcong soldier by American troops. See id. As noted in the Presentence Investigation Report ("PSR"), Mr. Hurt was awarded the Nationals Defense Service Medal, the Vietnam Service Medal with One Star, and a Vietnamese Campaign Medal. See PSR at 13; Ex. 2 (Discharge).

The psychological impact of the Vietnam War on Mr. Hurt was severe. When Mr. Hurt returned to the United States following the war, he was unable to adjust to stateside life. For example, Mr. Hurt had no contact with the criminal justice system prior to his service in Vietnam. When he returned home after the war, however, Mr. Hurt was unable to re-integrate himself back into state-side life and took refuge in drugs, a habit he had first acquired during the war. See Ex. 1. The combination of his Post-Traumatic Stress Disorder ("PTSD") and drug addiction led to run-ins with the criminal justice system, initially for an armed robbery in 1972, and then for a series of petty offenses, mostly for low-level drug possession. See PSR at 6-8.

A November 29, 1995 PTSD exam conducted by the Veterans Administration documents the severe conditions Mr. Hurt was exposed to in Vietnam and the trauma these conditions

inflicted on Mr. Hurt. See Ex. 1. Among other important findings, the report contains the following psychiatric diagnosis of Mr. Hurt:

> Posttraumatic stress disorder directly related to his combat ordeal in Vietnam while serving with the Third Marine Division in 1966 to 1967 manifested by sleep disturbance, impaired concentration. The patient continues to have nightmares in which he very often will wake up in the middle of the night and is drenched in sweat, at times choking his wife, thinking she is the enemy. To this day the patient will duck for cover whenever he hears helicopter noise or the backfire of a vehicle. His wife reports that the patient will often enclose himself in the basement for days at a time. He is hypervigilent and he still suffers from flashbacks. He has no sense of future. He has a history of chronic irritability and episodic rage attacks, and the patient has developed a very isolative lifestyle to avoid confrontation and in an attempt to avoid anything that might remind him of Vietnam.

Ex. 1. Significantly, the Report also found that Mr. Hurt is "not able to handle his own money because of his very severe post-traumatic stress disorder symptoms and his tendencies to be unpredictable about his drug abuse." Ex. 1 at 2.

While drug addiction and mental illness appear to have been the rule for Mr. Hurt since Vietnam, Mr. Hurt has also had periods where he has successfully fought back against his disease. These experiences provide hope for the future and for Mr. Hurt's future success in conquering his demons through participation in a quality drug treatment program. In 2002, for example, Mr. Hurt entered the Department of Veteran Affairs drug treatment facility in Martinsburg, West Virginia. VA records show that Mr. Hurt was housed in Martinsburg from January 2002 through at least May 2002, and that he experienced significant successes in the Martinsburg drug treatment program.[2] Mr. Hurt reports that he was clean and sober for several

---

[2] These records, which are substantial, contain a variety of private information. Counsel will make them available to the Court or government counsel upon request and will have them available at the sentencing hearing.

years following the Martinsburg program, but relapsed upon the government's commencement of the instant prosecution. The dates of both Mr. Hurt's "other convictions" and "other arrests" validate this claim. See PSR ¶¶ 22-41 (showing no convictions or arrests between year 2001 and March 16, 2005).

**B.    The Offense Conduct.**

In this case, Mr. Hurt was convicted of one count of Theft of Government Property. Mr. Hurt was convicted of either falsely stating that he had not received a check from the Veterans Administration ("VA") for $99,999.10, or wrongfully keeping the check after the check was erroneously issued to him. The verdict form did not specify which of the two alternate theories the jury relied on to convict Mr. Hurt and there is no way to know.

When examined in the very worst light, the evidence presented by the government at trial shows a pathetic and ultimately doomed attempt by Mr. Hurt to obtain additional monies from the VA. Under the government's theory, Mr. Hurt asked for a replacement check for $99,999.10 for a check he had obviously already received and deposited six months earlier. Then, in blatant disregard of VA rules and regulations, the VA sent Mr. Hurt a new check, without conducting even the most cursory background checks to verify whether Mr. Hurt had in fact received the initial check. The fact that Mr. Hurt was miraculously successful in his "scheme" to obtain additional money–due to VA incompetence–does not make Mr. Hurt's actions any less pathetic or unsophisticated.

## DISCUSSION

I.     THE POST-<u>BOOKER</u> SENTENCING FRAMEWORK.

The Court in <u>Booker</u> held that judges are required to "take account of the Guidelines <u>together</u> <u>with</u> other sentencing factors," and to "<u>consider</u>" the guidelines along with all the other required factors. <u>Id.</u> at 259 (emphasis added). But there is no requirement that a sentence be within the guidelines range, and a number of other statutory factors, which are mandatory, must be followed by the court, because section 3553(a) remains in effect and sets forth numerous factors that guide sentencing. <u>Id.</u> at 261.

Thus, courts are now required to impose a sentence "<u>sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)</u>" of 18 U.S.C. § 3553(a). (Emphasis added). These purposes include the necessity for the sentence:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Subsections (A) through (D) of § 3553(a)(2) thus highlight the primary purposes of sentencing. <u>See</u> <u>also</u> § 3551 (defendant "shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) . . ."). In determining a sentence consistent with these goals, the court must consider a number of other factors as well- - <u>see</u> § 3553(a)(1) - (7) - - including "the nature and

circumstances of the offense and the history and characteristics of the defendant," the sentencing guidelines and policy statements issued by the Sentencing Commission, and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In addition, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense, which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Following Booker, the D.C. Circuit has explained that § 3553(a) "remains in effect, and sets forth numerous factors that guide sentencing," and that because the guidelines are now advisory, they are now "one among a number of factors to be weighed by the District Court in sentencing." United States v. Price, 409F.3d 436, 442-43 (D.C. Cir. 2005). The court of appeals also recently decided United States v. Ayers, 428 F.2d 312 (D.C. Cir. 2005), a case in which the district court had, before Booker, imposed a guidelines sentence and an alternative sentence that were identical. The Ayers court remanded for resentencing because it was "in doubt as to whether the court considered the other sentencing factors in § 3553(a) together with the Guidelines in formulating its non-guidelines sentence." Id. at 315. The court stated that defendant's request to present mitigating evidence reflecting factors not included in the guideline-oriented presentence report was appropriate because "mitigating evidence would have been relevant, of course, to the court's analysis under § 3553(a)." Id. The court also adopted, id. at 314, the view of the Second Circuit in United States v. Lake, 419 F.3d 111, 114 (2d Cir. 2005), that "without the mandatory duty to apply the guidelines, consideration of the other section 3553(a) factors 'acquires new significance.'" (Quoting United States v. Crosby, 369 F..3d 103,

111 (2d Cir. 2005)).

More recently, the court of appeals decided <u>United States v. Gomez</u>, 431 F.3d 818, 822 (D.C. Cir. 2005), where the district court had treated the guidelines "as mandatory." The defendant had requested downward departures on various grounds, but the district court believed that the factors did not warrant a departure. Nevertheless, the court remanded for sentencing because, "if <u>Booker</u>'s rendering the Guidelines discretionary means anything, it must give a district judge greater latitude on these issued than did <u>Koon v. United States</u>, 518 U.S. 81 (1996)." <u>Gomez</u>, 431 F.2d at 825. The court further noted that a denial of a departure was "a quite different inquiry" from whether a district court "if subject to the guidelines only on a discretionary basis, . . . would be reasonably likely to give a lower sentence." <u>Id.</u> at 826. This is because, in addition to the guidelines, "the district court <u>must</u> consider the criteria set forth in section 3553(a)." <u>Price</u>, 409 F.3d at 446 (Henderson, J., concurring) (emphasis in original).

In <u>United States v. Brown</u>, this circuit recognized that pre-<u>Booker</u> calculation can no longer be sustained on appeal when the trial court felt restricted from considering factors which the Guidelines would discard. <u>See</u> <u>United States v. Brown</u>, 449 F.3d 154, 159 (D.C. Cir. 2006). The <u>Brown</u> court recognized that factors such as death and illness in the family, psychiatric treatment, and family difficulties may all weigh on the trail court's decision to depart from the sentencing regime. <u>Id.</u> The trial court in <u>Brown</u> committed reversible error when it expressed inability to consider such factors. <u>Id.</u> Despite the recognition that the trial judge may have reached the exact same sentencing decision, failure, after <u>Booker</u>, to consider a wider range of mitigating factors necessitated remand for resentencing. <u>Id.</u> at 160.

A number of other courts of appeals have recognized that the guidelines are not always

consistent with other goals of sentencing and that those goals sometimes conflict with each other. A prime example is United States v. Serrata, 425 F.3d 886, 913-915 (10th Cir. 2005), where the district court had erred in granting departures under the guidelines for various factors. The court of appeals, held, however, that these same factors were relevant to the district court's consideration, under § 3553(a), of whether a sentence below the advisory guidelines range was appropriate. Id. at 918. The court noted that there "appears to be tension among the statutes and the guidelines . . . but, in the wake of Booker, the incongruity diminishes as sentencing judges are encouraged to exercise their discretion." Id. at 918-9.

Likewise, in United States v. Scott, 405 F.3d 615, 617 (7th Cir. 2005), the court of appeals stated that "with the guidelines advisory the judge can take into account mitigating factors that the guidelines ignored." "Anything but a loose comparison to pre-Booker departure cases would vitiate the post-Booker discretion that sentencing courts enjoy." United States v. Castro-Juarez, 425 F.3d 430, 436 (7th Cir. 2005). After Booker, factors that were discouraged as departures under the guidelines "might be afforded more weight in a particular case" under the statute. United States v. Lata, 415 F.3d 107, 131 (1st Cir. 2005).

In United States v. Nickl, 427 F.3d 1286, 1303 (10th Cir. 2005), the court remanded for resentencing because although the district court had "concluded mandatory application of the sentencing guidelines prohibited it from granting a downward departure," the district court might not have imposed "the same sentence if it viewed the guidelines as merely advisory." Factors "which were not available for consideration under the mandatory Guidelines regime," may now be considered in imposing sentence. United States v. Antonakopoulos, 399 F.3d 68, 81 (1st Cir. 2005). However,

> It is worth noting that a district court's job is not to impose a "reasonable" sentence. Rather, a district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task.

United States v. Foreman, 436 F.3d 638, 644 n.1 (6th Cir. 2006) (emphasis in original).

II.   **THE COURT SHOULD DEPART DOWNWARD FROM THE APPLICABLE GUIDELINE RANGE BECAUSE MR. HURT SUFFERS FROM A SIGNIFICANTLY REDUCED MENTAL CAPACITY.**

The PSR correctly calculates an Offense Level of 14. Given a Criminal History Category of II, the PSR correctly states the applicable **predeparture** Guidelines range in this case as 18 to 24 months.

A sentence in this predeparture range, as the Government requests, would not adequately take into account the undisputed fact that Mr. Hurt suffered from PTSD throughout the time of the instant offense. For this reason, Mr. Hurt respectfully asks this Court to grant his motion for a downward departure of at least four levels from the low end of the Guidelines range based upon Mr. Hurt's diminished capacity, pursuant to Section 5K2.13. If the Court departs four levels, it can then impose an **appropriate** Guidelines sentence in this case: time served, followed by a period of supervised release with a condition that Mr. Hurt complete a residential drug treatment program.

Section 5K2.13 of the Guidelines permits this Court to impose a sentence below the applicable Guidelines range if the "defendant committed the offense while suffering from a significantly reduced mental capacity." U.S.S.G. § 5K2.13.[3] A "significantly reduced mental

---

[3] This guideline was amended, effective October 27, 2003, to require a finding that the significantly reduced mental capacity contributed substantially to the commission of the offense. However, it is the pre-amendment guideline that is applicable here because the offense

capacity" means that the defendant, "although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 comment n.1.  If the Court finds that a downward departure is warranted, "the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense." U.S.S.G. § 5K2.13.

"[T]he ultimate goal of section 5K2.13 'is to treat with lenity those individuals whose reduced mental capacity contributed to the offense.'" United States v. Leandre, 132 F.3d 796, 803 (D.C. Cir. 1998) (quoting United States v. Chatman, 986 F.2d 1446, 1454 (D.C. Cir. 1993) (vacating and remanding for sentencing)).  The Chatman court noted that "two of the primary rationales for punishing an individual by incarceration–desert and deterrence–lose some of their relevance when applied to those with reduced mental capacity." Id. at 1452.  Thus, "[p]ersons who find it difficult to control their conduct do not–considerations of dangerousness to one side–deserve as much punishment as those who act maliciously or for gain." Id. (quoting United States v. Poff, 926 F.2dd 588, 595 (7th Cir. 1991) (en banc) (Easterbrook, J., dissenting).

A defendant need not be insane or mentally retarded to merit the departure under § 5K2.13.  See Leandre, 132 F.3d at 803.  Rather, the Court must find that the defendant's condition "'impaired the formation of reasoned judgments,'. . . or prevented him from processing information when he committed the offenses." United States v. Goosens, 84 F.3d 697, 701 (4th Cir. 1996) (quoting United States v. Cantu, 12 F.3d 1506, 1513 (9th Cir. 1993), and citing United

---

occurred prior to the amendment.  A departure, nonetheless, would be similarly applicable under the amended guideline because Mr. Hurt's diminished capacity did substantially contribute to the commission of the offense.

States v. Johnson, 979 F.2d 396, 401 (6th Cir. 1992)).

With respect to causation, a defendant need not show his mental condition was the "but for" cause of the offense. Leandre, 132 F.3d at 803 (noting that all circuits to have addressed the causation issue have rejected the "but-for" test). A defendant is required to show only that his reduced mental capacity <u>contributed</u> to the commission of the offense. "[O]nce some nexus is shown, to any degree, the district court may depart downwardly to reflect the extent of that contribution." Id. at 804 (citing Cantu, 12 F.3d at 1515)).

Here, there is no dispute that Mr. Hurt suffered from PTSD at the time he allegedly committed the offense. See Gov. Mem. at 4 ("There is no dispute that the defendant suffers from PTSD"). Thus, the only issue is whether Mr. Hurt's PTSD "contributed" to the commission of the instant offense. The attached PTSD Exam conducted by the VA concludes that Mr. Hurt is "completely and totally disabled" due to his "severe PTSD." Id. at 2. It also establishes that Mr. Hurt's PTSD contributes to anti-social behavior, and in particular to issues surrounding money. See, e.g., Ex. 1 at 2 ("In my opinion the patient is not able to handle his own money because of his very severe posttraumatic stress disorder symptoms and his tendencies to be unpredictable about his drug abuse"). Because the report (as well as the government's own admissions) establish beyond peradventure that Mr. Hurt "committed the instant offense while suffering from a significantly reduced mental capacity," U.S.S.G. § 5K2.13 (2002), the Court should depart 4 levels and sentence Mr. Hurt to time served plus a term of supervised release (with a condition of inpatient drug treatment).

**III.   IN THE ABSENCE OF A GUIDELINES DEPARTURE THE COURT SHOULD SENTENCE MR. HURT TO TIME SERVED UNDER <u>BOOKER</u> AND 18 U.S.C. § 3553(A).**

In the absence of a departure, the Court should still sentence Mr. Hurt to time served under <u>Booker</u> and the sentencing factors set forth at 18 U.S.C. § 3553(a)(1). A prolonged sentence of incarceration for Mr. Hurt would simply not be purposeful, when his problems are so obviously derived not from inherent criminality, but from drug use and PTSD, a mental illness. A consideration of these factors, which predominate this case, clearly suggests a sentence of time served with appropriate conditions of supervised release.

    **A.   Mr. Hurt's History and Characteristics.**

Mr. Hurt is, despite his struggles with mental illness and drug addiction, a fundamentally good person. There can be no question that he is the "backbone" of his family. <u>See</u> PSR at 12 (noting his wife, Edwina Strong's, description of Mr. Hurt as "a good father who is needed at home. They have known each other for 25 years and he is the backbone of the family"). Notably, Mr. Hurt's children are excelling in life; Gregory Hurt, Jr., age 22, attends the University of the District of Columbia; Hakeem Hurt, age 19, just began a full scholarship at the University of Maryland. All five younger children are also in school. Their successes, while wonderful in their own right, raise the tragic question of what Mr. Hurt's own life could have been were it not for the Vietnam War and its impact on his life.

    **B.   The Nature and Circumstances of the Offense.**

        **1.   The Offense.**

The offense conduct is discussed above. At worst, the evidence shows a desperate attempt by Mr. Hurt to obtain extra cash. Mr. Hurt's pathetic attempt was successful only

because the VA blatantly disregarded its own rules and regulations for processing replacement check claims. The offense reflects little premeditation and even less sophistication. The Court should consider that much more sophisticated, cunning frauds fall under the same Guideline as the Guideline applied in this case, U.S.S.G. § 2B1.1. It would be illogical and unjust to sentence Mr. Hurt to the same term of imprisonment that is faced by those defendants who commit calculated, premeditated frauds motivated only by their own greed.

      **C.**      **The Kinds Of Sentences Available.**

Finally, the Court should consider the "kinds of sentences available." 18 U.S.C. § 3553(a)(3). A sentence of extensive incarceration, as advised by the Guidelines, would be greater than what is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, or effectively provide Mr. Hurt with needed educational or vocational training and medical care. See 18 U.S.C. § 3553(a). As the Government itself appears to recognize, Mr. Hurt's drug use and mental illness are the main factors behind his criminal history. See Gov. Mem. at 4. Thus, the appropriate sentence is one that places Mr. Hurt directly into residential drug treatment–not one that simply places Mr. Hurt behind bars for between 18 and 24 months.

## **CONCLUSION**

WHEREFORE, Defendant Gregory Hurt respectfully requests that this Court grant his departure motion and sentence him to time served, followed by a period of supervised release which may include a condition that he be placed directly into a residential drug treatment program.

Respectfully submitted,
A.J. KRAMER
Federal Public Defender


_____/s/_____
Jonathan S. Jeffress
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Ste 550
Washington, D.C.  20004
(202)  208-7500
