IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Crim. No. 05-418 (JR) |
| GREGORY HURT, | ) ) ) | |
| Defendant. | ) ) | |

**OPPOSITION OF THE UNITED STATES TO
DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE**

The United States, by and through its attorney, the United States Attorney in and for the District of Columbia, hereby submits this Opposition to the Defendant's Motion for Downward Departure. Pursuant to § 5K2.13 of the United States Sentencing Guidelines ("USSG" or "Guidelines"), the defendant argued that this Court should depart downward "at least four levels" from an Offense Level of 14 "based upon Mr. Hurt's diminished capacity." *See* Defendant Gregory Hurt's Mem. in Aid of Sentencing & Mot. for Downward Departure ("Def. Mot.") at 9 (filed Nov. 28, 2006). According to the defendant, he had a diminished capacity at the time of the offense because of his diagnosis of Post-Traumatic Stress Disorder ("PTSD") and his PTSD contributed to the instant offense. *Id.* at 11. Although the Government does not dispute that the defendant suffers from PTSD, there is no evidence that PTSD impaired the defendant's ability either to understand it would be wrong to steal $99,999.10 from the United States Department of Veterans Affairs ("VA") or to control himself from stealing that money. Nor is there any evidence that the defendant's PTSD contributed to his decision to steal from the government. As a result, the Motion should be denied.

## FACTS

There is no dispute that Defendant Hurt's guidelines range under the Guidelines is 18-24 months' imprisonment based on a total offense level of 14, with a Criminal History Category II. *See* Presentence Investigation Report ("PSR") at ¶ 60. The PSR did not identify – and the defendant did not submit – any information that would suggest a departure from the sentencing guidelines range. *Id.* ¶ 75. Instead, after the PSR had been issued, the defendant asserted that the Court should depart at least four levels from an Offense Level of 14 "based upon Mr. Hurt's diminished capacity." *See* Def. Mot. at 9 (citing USSG § 5K2.13).

The source of the defendant's allegedly diminished mental capacity is his PTSD. As previously stated by the Government, there is no dispute that the defendant suffers from PTSD. See Memorandum of the United States in Aid of Sentencing at 4 (filed Nov. 27, 2006) (Under Seal). The only evidence cited by the defendant to establish both a diminished mental capacity and a connection between the alleged diminished capacity and the instant offense is the defendant's diagnosis of PTSD and a "Compensation and Pension Exam Report" for PTSD conducted on the defendant by the VA on November 29, 1995 (the "1995 Report"). *Id.* at 11. More particularly, the defendant recited the Report's conclusion that the defendant was "completely and totally disabled," and quoted the following excerpt from the Report: "In my opinion the patient is not able to handle his own money because of his very severe posttraumatic stress disorder symptoms and his tendencies to be unpredictable about his drug abuse." *Id.* at 11 (quoting Exhibit 1 at p. 2).

ARGUMENT

THE DEFENDANT HAS NOT MET THE REQUIREMENTS FOR A
DOWNWARD DEPARTURE UNDER § 5K2.13 OF THE GUIDELINES

At the time of the instant offense, § 5K2.13 of the Guidelines provided the Court with discretion to grant a downward departure in the following circumstances:

> A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; . . . [or] (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. . . . . If departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

USSG § 5K2.13.[1]  Thus, under section 5K2.13 of the Guidelines, a court may depart downward if a defendant (1) committed the offense while suffering from a "significantly reduced mental capacity," (2) that was not caused by the voluntary use of drugs or other intoxicants, (3) where the defendant's mental incapacity "contributed to the commission of the offense," and (4) so long as the defendant's criminal record does not indicate a need for imprisonment to protect the public.  *See United States v. Leandre*, 132 F.3d 796, 800 (D.C. Cir. 1998) (enumerating eligibility criteria for the guideline).  Here, as demonstrated further below, the defendant has not established by a preponderance of the evidence that he suffered from a "significantly reduced mental capacity" at the time of the offense or that his alleged incapacity "contributed to the commission of the offense."

---

[1] Amendments to § 5K2.13 effective October 27, 2003 (after the defendant committed the instant offense) modified the conditions for a departure under the guideline.  The Government does not urge application of the revised guideline.

> **A.     The defendant has not established that he suffered from a significantly reduced mental capacity at the time of the instant offense.**

According to the Commentary to § 5K2.13 of the Guidelines, a "'[s]ignificantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." USSG § 5K2.13 comment nt.1. Courts have held that this definition contains "both a cognitive prong and a volitional prong." *See United States v. Ruff*, 998 F. Supp. 1351, 1361 (M.D. Ala. 1998) ("departure is warranted if the defendant's reduced mental capacity prevents the defendant from appreciating the wrongfulness of the offense, or if the defendant understands the wrongfulness of the act, but the reduced mental capacity renders the defendant unable to control the offensive conduct") (citing *United States v. McBroom*, 124 F.3d 533, 546 (3d Cir. 1997) and *United States v. Pullen*, 89 F.3d 368, 370-71 (7th Cir. 1996)). Here, the defendant has failed to make either showing.

The only evidence offered by the defendant to establish that he committed the offense while suffering from a significantly reduced mental capacity is that he suffered from PTSD at the time of the offense. *See* Def. Mem. at 11 ("Here, there is no dispute that Mr. Hurt suffered from PTSD at the time he allegedly committed the offense. Thus, the only issue is whether Mr. Hurt's PTSD 'contributed' to the commission of the offense.") (Citation omitted.). A diagnosis of PTSD alone, however, does not allow the defendant to skip over the requirement under § 5K2.13 that he establish that PTSD caused him to suffer from a significantly reduced mental capacity at the time of the instant offense. *See United States v. Greenfield*, 244 F.3d 158, 162 (D.C. Cir. 2001)

("diagnosis of depression, alone, does not establish that a defendant suffered from 'significantly reduced mental capacity' under § 5K2.13"); *United States v. Watkins*, 179 F.3d 489, 500 (6th Cir. 1999) (affirming refusal to depart where, although defendant introduced evidence that he suffered from "depressive disorder," no evidence "reflected his alleged diminished capacity"); *United States v. Withers*, 100 F.3d 1142, 1148 (4th Cir. 1996) (same).

Put simply, the defendant offered no evidence on the impact the defendant's PTSD had on the defendant's mental capacity at the time of the offense in or about July 2003. The defendant, for instance, offered no evidence to establish that his PTSD at that time (or any other time) significantly impaired his ability (1) "to understand the wrongfulness of the behavior comprising the offense," *i.e.*, lying to the VA to obtain a check for $99,999.10 and, then, hiding the ill-gotten proceeds when the VA detected the lie, or (2) "to exercise the power of reason." *See* U.S.S.G. § 5K2.13 comment nt.1. Nor did the defendant establish that his PTSD had significantly impaired his ability "to control behavior that the defendant knows is wrong." *Id.*; *cf. Leandre*, 132 F.3d at 801 (affirming refusal to depart under § 5K2.13 despite evidence before the court on reduced mental capacity including a psychological report classifying Leandre as mildly mentally retarded and relating instances of hallucinations and paranoid delusions); *Greenfield*, 244 F.3d at 159-160 (affirming refusal to depart despite written report and testimony at sentencing hearing by defendant's physician).

To the contrary, the evidence demonstrated that the defendant was able to exercise the power of reason at the time of the offense. The two VA witnesses (Diana Hannah and James Wear) who spoke with the defendant on the day he lied about not already having received a check for $99,999.10 testified that the defendant appeared to exercise the power of reason in that

he comprehended the questions they were asking him and was responsive to those questions. Ms. Hannah, who testified that she regularly interacted with the defendant on the issues he had with his VA benefits, testified that the defendant was coherent on each visit he made to the VA.

The evidence at trial also demonstrated that the defendant understood the wrongfulness of his behavior and was able to control behavior he knew to be wrong. For example, after the VA informed the defendant by letter that the VA had erroneously issued the $99,999.10 replacement check to the defendant based on his false representation that he had not already received the check, the defendant transferred virtually all of the money out his existing bank account and put it into a new account unknown to the VA. Such consciousness of guilt evidence demonstrated that the defendant knew he had done something wrong in obtaining the check, keeping the money, or both. Further, the fact that the defendant had no prior history of similar conduct with the VA and did not try to repeat his fraudulent conduct after the VA informed him of his wrongful behavior also demonstrated that the defendant was able to control behavior he knew to be wrong.

The defendant's reliance on the 1995 Report is unavailing. The Report's conclusion that the defendant was "completely and totally disabled" in November 1995 for purposes of being eligible to receive VA benefits for PTSD, *see* Def. Mem. at 11 (quoting Ex. 1 at p. 2), says nothing about the defendant's mental capacity in 2003 to reason, tell right from wrong, or refrain from conduct he knew to be wrong. Further, the defendant's admission that he has subsequently operated vending businesses may undermine the continued validity of the conclusion that the defendant is completely and totally disabled. Indeed, to the extent the 1995 Report has any application to the defendant's cognitive and volitional capacities in 2003, it cuts against a finding

of significantly reduced mental capacity.  *See* Def. Mem. at Exhibit 1 (Report stated that the defendant showed "no signs of psychosis, delusions, or any paranoid behaviors").

      **B.**      **The defendant failed to establish that his PTSD contributed to the instant offense.**

In addition to failing to establish that he suffered from a significantly reduced mental capacity, the defendant failed to establish one of the other criteria for a departure under § 5K2.13, *i.e.*, that his PTSD contributed to the instant offense.  The defendant established no connection between his diagnosis of PTSD and his decision to steal $99,999.10 in July and August 2003.  *Cf. Leandre*, 132 F.3d at 801 (affirming refusal to depart downward despite evidence before the court on the connection between reduced mental capacity and instant offense that included a psychologist's conclusion that defendant's decision to sell drugs was "partly" influenced by his psychiatric difficulties).  The only evidence offered by the defendant to establish that PTSD contributed to the instant offense was the 1995 Report.  *Id.* at 11.  More particularly, the defendant quoted the following sentence from that report:  "In my opinion the patient is not able to handle his own money because of his very severe posttraumatic stress disorder symptoms and his tendencies to be unpredictable about his drug abuse."

A statement from a report issued in 1995 that the defendant's PTSD caused him to be unable to handle his own money cannot establish that the defendant's PTSD contributed to his decision to steal government property eight years later in 2003.  First, there is no evidence that a symptom of the defendant's PTSD as manifested in 1995, *i.e.*, an inability to handle his own money, continued to manifest itself in the same way in 2003.  *See Greenfield*, 244 F.2d at 163 (affirming refusal to depart where defendant's physician conceded "that he had 'no idea . . . what

[Greenfield's] mental condition was in January of 1998'"). Second, even assuming that the defendant's PTSD continued to manifest itself in 2003 in the defendant's inability "to handle his own money," there is no obvious, stated or established connection between the defendant's inability to handle his own money and an inability to keep from stealing the government's money. *See United States v. Johnson*, 49 F.3d 766, 768 (D.C. Cir. 1995) (affirming refusal to grant departure under § 5K2.13 for PTSD and requiring defendant to establish that PTSD "contributed to the commission of the offense" because "a defendant might otherwise assert perpetual eligibility for a downward departure for even repeat offenses merely by securing a diagnosis of PTSD").[2] Because the defendant failed to establish that his PTSD contributed to his decision to steal $99,999.10 from the government, the Court should not grant the downward departure. *See Leandre*, 132 F.3d at 803 ("Absent some causal link, the sentencing judge would misapply the Guidelines by granting a departure.").

---

[2] The Court may also properly consider the nature of the offense in determining whether the defendant's allegedly reduced capacity contributed to the offense. *See Leandre*, 132 F.3d at 805 ("The mental acumen required for the planning, preparation, and execution of a crime is a logical starting place for examining the effects of a defendant's reduced capacity."). Here, the defendant conceded that the instant offense "reflects little premeditation and even less sophistication." Def. Mem. at 13. The admittedly unsophisticated nature of the offense further demonstrates that the defendant's PTSD did not contribute to the theft.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court deny the Defendant's Motion for a Downward Departure.

                                                 Respectfully submitted,

                                                 JEFFREY A. TAYLOR
                                               ATTORNEY OF THE UNITED STATES
                                               IN AND FOR THE DISTRICT OF COLUMBIA

BY:          /s/
                Michael K. Atkinson
                Assistant United States Attorney
                D.C. Bar No. 430517
                United States Attorney's Office
                Fraud & Public Corruption Section
                555 4th Street, N.W.
                Washington, D.C. 20530
                (202) 616-3702
                (202) 307-2304 (fax)

DATED: November 30, 2006